UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KAAREN E. MITCHELL,

          Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

          Defendant.

Case No. 2:20-cv-01936-EJY

**ORDER**

Plaintiff Kaaren E. Mitchell ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  For the reasons stated below, the final decision of the Commissioner is affirmed.

## I.      BACKGROUND

On December 15, 2015, Plaintiff filed an application for SSI, alleging onset of disability beginning May 1, 2003.  Administrative Record ("AR") 217–24.  Plaintiff later amended the alleged onset date of disability to January 1, 2011.  AR 25.  The Commissioner denied Plaintiff's claim by initial determination on July 15, 2016 (AR 131–34), and again upon reconsideration on July 31, 2017.  AR 138–40.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 141.  After conducting a hearing on July 18, 2019 (AR 51–94), ALJ Michael D. Burrichter issued his determination that Plaintiff was not disabled on September 24, 2019.  AR 22–50.  On November 8, 2019, Plaintiff requested that the Appeals Council review the ALJ's decision.  AR 213–16.  Upon denial of Plaintiff's request for review by the Appeals Counsel (AR 1–6), the ALJ's September 24, 2019 decision became the final order of the Commissioner.  42 U.S.C. §405(h).

## II.      STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 4095(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted).  In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.   DISCUSSION

### A.   Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)   the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or

'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(b).

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(e).

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  *See* 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *See id*.

*Id*. at 1098–99 (internal alterations omitted).

**B.**   **Summary of ALJ's Findings**

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since December 7, 2015, the date of Plaintiff's application.  AR 28.  At step two, the ALJ found that

Plaintiff suffered from medical determinable severe impairments consisting of "breast cancer status-post lumpectomies, degenerative disc disease of the cervical and lumbar spine, bilateral plantar fasciitis/heel spurs, tendinopthy of the right ankle/peroneus brevis tendon, right shoulder fracture with osteoarthritis, upper extremity deep vein thrombosis, asthma, obstructive sleep apnea ("OSA"), obesity, mood/cyclothymic disorder, anxiety/panic disorder, and history of obsessive compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD").  AR 28, 26.[1]  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of the regulatory listed impairments.  AR 29.

In preparation for step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to:

> [C]arry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for four hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday.  The claimant should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  The claimant can frequently reach overhead and in all other directions bilaterally.  The claimant can occasionally use foot controls bilaterally.  The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration.   The claimant can never tolerate exposure to humidity/wetness, dust, odors, fumes and pulmonary irritants beyond a level found in an indoor work environment such as an office or retail store; and never extreme cold and extreme heat.  The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes.  The claimant can occasionally respond to and have interaction with supervisors, coworkers, and the general public.

AR 31–32.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work.  AR 41.  Specifically, the ALJ determined Plaintiff's RFC prevented her from performing her past relevant work as a "general office clerk," Dictionary of Occupational Titles ("DOT") No. 209.562-010, or as an "information clerk," DOT No. 237.367-022.  *Id.*

---

[1]      The Court notes that some pages of the ALJ decision are out of order in the Administrative Record.  AR 26 should follow AR 28.

[2]      "Residual functional capacity" is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).

The ALJ classified Plaintiff as "a younger individual age[d] 45–49, on the date the application was filed," who "subsequently changed age category to closely approaching advanced age"; categorized Plaintiff as possessing "at least a high school education" and as "able to communicate in English"; and treated the transferability of job skills as immaterial to the disability determination. *Id.*

At step five, the ALJ relied on a Vocational Expert's ("VE") testimony to determine that there are light, unskilled jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of: router, DOT No. 222.587-038, with 76,400 jobs available in the national economy; retail price marker, DOT No. 209.587-034, with 71,400 jobs available in the national economy; and electrical assembler, DOT No. 729.684-054, with 55,300 jobs available in the national economy. AR 42. The ALJ confirmed that the VE's testimony was consistent with the information found in the DOT and its companion publication, Selected Characteristics of Occupations ("SCO"). *Id.* The ALJ also noted that, for restrictions that were not addressed in either the DOT or SCO, such as "a limited range of light exertional work, overhead reaching, fast-paced production, and contact with others," the VE "relied on their experience in the vocational field, education and/or training for the basis of their testimony." *Id.* Noting that the claimant had no objections to the VE's professional knowledge, training, or experience, the ALJ accepted and relied upon the VE's testimony. *Id.*

The ALJ concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, since December 7, 2015, the date the application was filed." *Id.*

**C.** <u>**Plaintiff's Symptom Testimony**</u> (AR 61-85)

At her administrative hearing, Plaintiff testified that she suffers from constant pain in her shoulder, and that physical therapy and multiple cortisone injections have been helpful "to a small degree." AR 76. She stated she experiences pain when reaching above shoulder height and extending or reaching outward. *Id.* She also experiences low back pain that radiates into her legs and up the side of her back. *Id.* Plaintiff noted that she has trouble going from the seated to standing position, bending over, and stooping. AR 77. Those activities can cause muscle spasms that can last from five to twenty minutes. *Id.* She generally gets muscle spasms twice a week and noted that

cold weather and physical activity increase their frequency.   AR 77–78.   Plaintiff takes cyclobenzaprine to reduce the frequency of her muscle spasms.  *Id*.  Plaintiff also noted that she has tried laser light treatment, massage treatment, physical therapy, and pain medications for her back, but they are temporarily effective and do not take away all of her pain. AR 78.  Plaintiff noted that she has peripheral neuropathy in her hands, with injections helping "after a period of a few weeks." AR 79.  Her neuropathy affects her dexterity—she finds it difficult to do simple tasks like holding a pen or buttoning buttons.  *Id*.  Plaintiff also testified that her heel spurs and plantar fasciitis cause problems walking due to pain and noted that injections have been somewhat effective.  AR 81.  She stated that she has trouble staying in one position, must constantly adjust, and can stand for only ten minutes at a time due to pain in her feet and lower back.  AR 83.  Plaintiff also noted that she could not work at a job where she could sit and stand without restriction because her "concentration span would be totally affected by the fact that [she] would be needing to constantly move around."  AR 84.  Plaintiff further testified that she can concentrate for ten to thirty minutes at a time, and that she is "sometimes" able to multitask.  AR 75.

Plaintiff testified that her pain limits her daily activities.  She noted that her friend's son has to do her hair because she has difficulty lifting her arms.  She testified that she has trouble lifting heavy things—she can lift a purse but not a gallon of milk.  AR 68–69.  Plaintiff stated that she does not have permanent living arrangements but stays with friends.  She helps do simple household chores like wiping down the counters, but she cannot do tasks like sweeping or vacuuming.  She testified that her friends do the laundry, and that she likely could not do laundry because she experiences back spasms from bending down to load and unload the dryer.  AR 70.  Plaintiff stated that she sometimes prepares meals, goes to the store three or four days a week, and can drive if someone lends her a car.  *Id*.  She noted that she can go online to video chat with her children, but because she has a short attention span, she typically does not watch movies or read news.  AR 71.

Plaintiff testified that she has asthma, which tends to be exacerbated by winds and the time of year.  AR 68.  She further testified to migraines and headaches that can last one to four days.  AR 79–80.  Her migraines make her "extremely light sensitive" and create tension through her neck and face.  AR 80.  She further testified that she has experienced negative side effects from breast cancer,

1   including a blood clot following lumpectomy procedures and an infection at her port site.  AR 75.

2   Plaintiff also testified that she suffers from diverticulitis, which causes her to have to use the

3   bathroom at least twice in a two-hour period.  AR 82.

4          With respect to Plaintiff's mental limitations, she testified that she has been diagnosed with

5   and is on medication for depression.  AR 71.  Depression makes her feel withdrawn and

6   overwhelmed.  She "spend[s] a lot of time just wanting to sleep."  AR 72.  Plaintiff also suffers

7   from anxiety.  She experiences anxiety attacks situationally but "not as often as [she] used to."  AR

8   72.  Loud noises like fireworks and crowds exacerbate her anxiety.  *Id*.  Plaintiff takes Xanax to

9   control her symptoms.  AR 72–73.  Plaintiff also experiences flashbacks and nightmares.  AR 73.

10  She takes prazosin for those symptoms but testified that they "still occur from time to time."  *Id*.

11  Her mental ailments cause hypervigilance and difficulties getting along with people.  AR 74.

12  Plaintiff testified that she often becomes very "on edge" and "short-tempered," which causes her to

13  get into confrontations with others.  AR 74.

14         Plaintiff also testified to difficulties sleeping.  She noted that she has a very irregular sleep

15  pattern, even with medication.  She also testified to having obstructive sleep apnea, which "affects

16  [her] ability to get good rest."  AR 82.  She testified that she has a CPAP machine to help but having

17  the mask over her face causes anxiety.  AR 83.

18  **D.**   **Vocational Expert Testimony**

19         Vocational Expert Denise Waddell testified that Plaintiff's previous jobs consisted of work

20  as a general office clerk (DOT No. 209.562-010) and an information clerk (DOT No. 237.367-022).

21  AR 88.

22         The ALJ asked the VE to assume a hypothetical individual the same age, education, and

23  work history who "can lift and carry up to 20 pounds occasionally and lift or carry up to 10 pounds

24  frequently . . . [c]ould stand and/or walk for four hours or an eight-hour workday and sit for six out

25  of an eight-hour workday . . . should never climb ladders, ropes, and scaffolds and can occasionally

26  climb ramps and stairs, balance, stoop, kneel, crouch, and crawl . . . can frequently reach overhead

27  and in all other directions bilaterally . . . should never work at unprotected heights or with moving

28  mechanical parts and can occasionally work in vibration . . . can never tolerate exposure to humidity

and wetness, dust, odors, fumes, and pulmonary irritants beyond the level found in an indoor work environment such as an office or retail store and never extreme cold and extreme heat . . . are able to carry out detailed, but uninvolved instructions and meet requirements of simple routine and repetitive tasks in a work environment with no fast-paced production requirements involving simple work-related decisions with only occasional judgment and workplace changes . . . can occasionally respond to and have interaction with supervisors, coworking, and the general public."  AR 88–89. With these parameters in mind, the ALJ asked if this hypothetical person could return to her past work.  AR 89.  The VE responded that such a hypothetical person could not perform any of her past work.  *Id*.  When asked if this hypothetical person could perform any other work, the VE answered that they could work unskilled jobs at the light exertional level with a specific vocational preparation ("SVP") of 2.  As examples, the VE identified positions as a router (DOT No. 222.587-038, with 76,400 jobs available nationally), retail price marker (DOT No. 209.587-034, with 71,400 jobs available nationally), and electrical assembler (DOT No. 729.684-054, with 55,300 jobs available nationally). *Id*.

The ALJ then altered the hypothetical, and asked the VE to assume a person with the same limitations as the first hypothetical, but with a sedentary exertional level "in that they can lift and carry up to 10 pounds occasionally and lift and carry less than 10 pounds frequently[,] [s]tand and/or work for two hours in an eight-hour workday and sit for six hours of an eight-hour workday."  AR 89–90.  The VE testified that this hypothetical individual could still not perform any past work but could perform other jobs in the economy at the sedentary exertional level.  Those examples were wire wrapper (DOT No. 723.687-010, with 34,400 jobs available nationally), sealer (DOT No. 559.687-014, with 25,500 jobs available nationally), and lens inserter (DOT No. 713.687-026, with 23,200 jobs available nationally).  AR 90.

The ALJ presented a third hypothetical, in which the VE was asked to assume the same limitations as in the second hypothetical, with the additional limitation that "due to the combined effectiveness of their impairments, this individual would be absent from work two days a month." AR 91.  The VE testified that such a hypothetical individual could not perform past work or any other work.  *Id*.

The VE further testified that her testimony was consistent with the DOT, but that she supplemented her testimony with her work experience "in regard to limitations involving the limited range of light work in which [she] indicated those three jobs in hypo[thetical] number one could still be performed given the parameters of the standing and walking four out of eight hours, also overhead reaching, fast-paced production requirements, contact with supervisors, coworkers, the public, and absences as all that information is absent from the DOT and the SCO."  AR 91.

Plaintiff's hearing counsel also questioned the VE.  AR 91-92.  When asked whether a claimant in the first hypothetical could perform any work if "you were to further limit that individual such that the individual would be off task approximately 15 percent of the workday," the VE answered that such a person could not perform any jobs available in the national economy.  AR 92–93.  Plaintiff also asked the VE whether a claimant in the second hypothetical could perform any work if that individual would also "miss four or more days per month on a consistent basis."  AR 93.  The VE responded that such a person would not be able to perform any jobs in the national economy.  *Id.*

**E.   Issues Presented**

Plaintiff contends that the ALJ erred by (1) failing to articulate clear and convincing reasons for discounting her subjective complaints (ECF No. 19 at 6); and (2) failing to sustain his burden at step five because the jobs the VE identified are not sufficiently available in the national economy (*id.* at 9).

**1.   Plaintiff's Subjective Complaints**

The ALJ must engage in a two-step analysis when evaluating whether a claimant's testimony concerning pain, symptoms, and level of limitation is credible.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony concerning the severity of his symptoms

only by offering specific, clear and convincing reasons for doing so."[3]  *Garrison*, 759 F.3d at 1014–15 (internal citation omitted).  An ALJ's finding on this matter must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony.  *Thomas v. Barnhart*, 278 F.3d 948, 958 (9th Cir. 2002) (citation omitted).

In weighing a claimant's credibility for cases involving ALJ decisions rendered on or after March 24, 2016, including the present case, the ALJ may consider Plaintiff's: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; and (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual's function limitations and restrictions due to pain or other symptoms.[4]  Social Security Ruling ("SSR") 16-3p (eff. Mar. 28, 2016), 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.  A claimant's statements about his pain or other symptoms alone will not establish that he is disabled.  20 C.F.R. § 419.929(a)(1); 42 U.S.C. § 423(d)(5)(A).  And, a claimant is not entitled to benefits under the Social Security Act unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.  *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

---

[3]      In its Cross-Motion to Affirm and Opposition to Plaintiff's Motion to Remand, the Commissioner "maintains that [the clear and convincing reasons] standard [used when reviewing an ALJ's decision to discredit a claimant's allegations] is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. §405(g) and with agency regulations and rulings . . . ."  ECF No. 23 at 4 n.7.  Notwithstanding, the Ninth Circuit has employed the clear and convincing reasons standard when reviewing an ALJ's decision to discredit a claimant's allegations.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1663 (9th Cir. 2014); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  This Court is bound to follow Circuit precedent.
[4]      SSR 96-7p was superseded by SSR 16-3p in March 2016.  SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016).  However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.  *Id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

1    Plaintiff argues the ALJ erred by failing to articulate clear and convincing reasons for

2    discounting Plaintiff's subjective complaints. ECF No. 19 at 6–9. The ALJ found Plaintiff's medical

3    determinable impairments could reasonably be expected to cause the alleged symptoms at step one

4    of the *Garrison* analysis. AR 26. However, at step two, the ALJ found Plaintiff's statements

5    concerning the intensity, persistence, and limiting effects of these symptoms were not entirely

6    credible for four reasons. The ALJ determined that: (a) Plaintiff's testimony conflicted with the

7    objective medical evidence; (b) Plaintiff's testimony conflicted with her reports of daily living; (c)

8    Plaintiff's lack of inpatient mental health treatment was inconsistent with the alleged severity of her

9    depression, anxiety, and PTSD complaints; and (d) Plaintiff's reports of improvement with treatment

10   were inconsistent with her allegations of debilitating impairments.[5]

11           a.       Plaintiff's testimony conflicted with the objective medical evidence.

12           When determining the extent of Plaintiff's symptoms, the ALJ must consider whether there

13   are any conflicts between Plaintiff's statements and the objective medical evidence. 20 C.F.R.

14   § 416.929(c)(4). However, an ALJ may not discredit a claimant's symptom testimony and deny

15   benefits solely because the degree of symptoms alleged is not supported by objective medical

16   evidence. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d 341, 346–47; *Fair v. Bowen*, 885 F.2d 597,

17   601 (9th Cir. 1989). The objective medical evidence is a relevant factor, along with the medical

18   source's information about the claimant's pain or other symptoms, in determining the severity of a

19   claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§

20   404.1529(c)(2), 416.929(c)(2). SSR 16-3 provides that the disability "determination or decision

21   must contain specific reasons for the weight given to the individual's symptoms, be consistent with

22   and supported by the evidence, and be clearly articulated so the individual and any subsequent

23   reviewer can assess how the adjudicator evaluated the individual's symptoms." That is, "providing

24   a summary of medical evidence in support of a residual functional capacity finding is not the same

25

26

27   [5]      In her opening brief, Plaintiff challenged only the ALJ's reliance on conflicts with objective medical evidence
         and her daily activities. The Commissioner contends that the ALJ gave two additional reasons to discount Plaintiff's
28   subjective complaints: effectiveness of treatment and lack of mental health treatment. The Court agrees and considers
         all four reasons.

as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Plaintiff contends, with no elaboration, that "[her] testimony and written statements are supported by the objective findings of record as summarized by the ALJ." ECF No. 19 at 8.  To the contrary, a review of the Administrative Record show the ALJ carefully highlighted the inconsistencies between the objective evidence and Plaintiff's testimony, a sample which includes:

- Clinical reports showing unremarkable findings related to side effects from breast cancer and diverticulosis despite "Plaintiff's reports of ongoing fatigue from a previous surgery secondary to diverticulitis";

- "CT angiogram of claimant's chest was negative for pulmonary embolism . . . [a] cardiac workup and stress test were all negative," and a "chest x-ray from June 2018 showed no acute cardiopulmonary process" despite claimant's history of deep vein thrombosis;

- X-rays, CTs, and MRIs from 2012, 2014, and 2017 demonstrating only mild to moderate cervical degenerative changes, peroneal tenosynovitis, and foraminal stenosis, which do not "demonstrate [the] disabling functional limitations" Plaintiff alleges;

- Physical examinations showing only "mild to moderate abnormalities in her functioning related to her physical impairments" including normal range of motion of her neck, negative straight leg raise tests, full strength in her extremities, negative Spurling tests, and normal gait;

- Mental examinations "generally exhibited clear speech, good eye contact, and intact cognitive function, insight, judgment, memory, mood, and affect" despite Plaintiff's allegations of debilitating mental impairments.

AR 33–39 (internal citations omitted).

On this record, the ALJ reasonably concluded that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 33.  While Plaintiff may disagree with the ALJ's findings, the ALJ provided a rational interpretation of the objective medical evidence as inconsistent with Plaintiff's subjective complaints.  The Court must defer to that interpretation.

          b.   <u>The ALJ did not err in determining Plaintiff's activities of daily living are inconsistent with her allegation of debilitating limitations.</u>

The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the

performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). "If a claimant engages in daily activities involving skills that could be transferred to the workplace," as here, "the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 680 (citing *Fair*, 885 F.2d at 603; *Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir.1999) (the ALJ properly determined an ability to fix meals, do laundry, and work in the yard served as evidence of Plaintiff's ability to work).

The ALJ determined that Plaintiff's ability to perform most personal care tasks, "shop in stores several times per week, prepare her own meals, drive when she has a vehicle available to her, and to attend weekly church meetings . . . is not supportive of her allegations that she cannot engage in any physical activity." AR 33. The ALJ also noted that Plaintiff reported some activity caring for horses, and that she was able to travel long-distance in an airplane from the United States to Australia and back. *Id*. The ALJ concluded that, while "the claimant may not be able to engage in all of the activities that she did in the past and it may take her longer to perform the task, she is more active than would be if all her allegations were consistent." *Id.*

 The ALJ also contrasted Plaintiff's activities against her alleged mental limitations. AR 38 (Plaintiff's "descriptions of her daily activities are not limited to the extent one would expect to associate with disabling mental impairments"). The ALJ explained that despite alleging that she rarely goes outside, Plaintiff admitted attending church weekly, going shopping several times per week, and living with friends. *Id*. While Plaintiff alleged having a short attention span, the ALJ noted that Plaintiff also testified she could multitask, "use the computer, navigate the internet to shop online, and use social media," which the ALJ relied upon to conclude that she could complete at least simple, routine, and repetitive tasks. *Id*.

Plaintiff does not contend that the ALJ inaccurately summarized her daily activities. She argues only that the ALJ erred by not specifically demonstrating how Plaintiff's "activities translate into the ability to perform full-time work on a sustained basis." ECF No. 19 at 8. The substantial evidence standard does not require such a specific showing. Reasonable inference supports the ALJ's decision to discount the severity of Plaintiff's complaints as they impact her ability to work.

*See*, *e.g.*, *Molina*, 674 F.3d at 1111 ("we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").  The ALJ's reference to Plaintiff's flights to and from Australia indicate the ability to sit for prolonged periods of time.  His reference to shopping, driving, preparing meals, attending church meetings, and caring for horses indicate that Plaintiff can handle some physical activity in the workplace.  Further, the ALJ specifically noted that her stated ability to multitask, be around friends, go shopping, and navigate the internet demonstrate Plaintiff's mental capacity to engage in simple, routine, and repetitive tasks.  Plaintiff's reported daily activities contradict her claims of total disability and provide a specific, clear, and convincing reason to discount her subjective complaints.

> c.   Plaintiff failed to challenge the ALJ's finding that her pain was managed with treatment, but even if she had, her argument would fail.

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

As a preliminary matter, Plaintiff failed to develop this argument with any specificity and, as such, is waived.  *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (a court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  Even if Plaintiff had challenged the ALJ's findings on this basis, however, the Court finds that the ALJ provided a specific, clear, and convincing reason to discount Plaintiff's subjective complaints.  The ALJ noted that Plaintiff reported some pain relief with her medications, various injections, and physical therapy.  AR 35, citing AR 757, 763–64, 769–70, 774–75, 779–80, 784, 788–89.  On this record, the ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed.

1

d.   Plaintiff failed to challenge the ALJ's finding that lack of mental health treatment conflicted with her subjective complaints but even if she did, any error would be harmless.[6]

2

3        Plaintiff also failed to challenge the ALJ's decision to discount her subjective complaints are

4  inconsistent with her minimal mental health treatment.   This argument is therefore waived.

5  *Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

6        Unexplained or inadequately explained reasons for failing to seek medical treatment cast

7  doubt on a claimant's subjective complaints.   20 C.F.R. §§ 404.1530, 426.930; *Fair*, 885 F.2d at 603.

8  However, the Ninth Circuit has recognized that "it is a questionable practice to chastise one with a

9  mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*,

10  100 F.3d 1462, 1465 (9th Cir. 1996).   But, when there is no evidence suggesting a failure to seek

11  treatment is attributable to a mental impairment rather than personal preference, it is reasonable for

12  the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity

13  of complaints.   *Molina*, 674 F.3d at 1113-14.

14        The ALJ partially discounted Plaintiff's allegations concerning her mental impairments

15  because, in 2017, she reported "no history of psychiatric inpatient treatment and only some

16  outpatient mental health assistance when she was living in Australia."   AR 37.   While the ALJ

17  acknowledged that Plaintiff was "treated for psychotropic medication management" and has

18  received outpatient counseling, he noted that "she has not required any inpatient care because of

19  mental health crisis during the relevant period.   One would expect objective abnormalities in at least

20  some of these areas if the claimant were truly experiencing disabling anxiety or panic."   AR 38.   The

21

22

---

23  [6]        Plaintiff contends in her Reply that the ALJ's reliance on minimal mental health treatment is "merely a furtherance of the claim of an alleged lack of objective [medical] support."   ECF No. 26 at 4 (citing *Palmer v. Astrue*, 2012 WL 3779046, at *5 (C.D. Aug. 30, 2012) (". . . to use the type of treatment to question Plaintiff's credibility, especially when there is no indication that a more aggressive treatment would be warranted if Plaintiff's symptoms were worse, essentially amounts to 'a back door finding that Plaintiff's statements are not fully corroborated by objective medical evidence.'").   The Court disagrees.   Courts regularly consider an ALJ's decision to reject a plaintiff's subjective complaint because of conservative or minimal treatment as a reason separate and distinct from inconsistency with objective medical evidence.   *See*, *e.g.*, *McCloud v. Saul*, 818 F. App'x 730, 732 (9th Cir. 2020) (unpublished) (lack of mental health treatment, inconsistencies between statements and medical record, and inconsistencies with medical record were each acceptable reasons to discount subjective complaints); *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding that evidence of conservative treatment is "sufficient to discount a claimant's testimony regarding severity of an impairment").

1    ALJ concluded that "the moderate level of treatment she has required is not suggestive of her having

2    disabling limitations from her various mental impairments." *Id*.

3           Discrediting a Plaintiff for not receiving inpatient mental health treatment, or receiving

4    "moderate" levels of treatment, raises concerns. *See*, *e.g.*, *Mason v. Colvin*, Case No. 1:12-cv-00584

5    GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (antidepressants and antipsychotic

6    medications not conservative treatment); *Odisian v. Colvin*, Case No. CV 12-9521-SP, 2013 WL

7    5272996, at *8 (C.D. Cal. Sept. 18, 2013) (treatment with psychiatric medications and sessions with

8    a psychologist not conservative treatment); *Matthew v. Astrue*, Case No. EDCV 11-01075-JEM,

9    2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) ("Claimant does not have to

10   undergo inpatient hospitalization to be disabled); *Regennitter*, 166 F.3d at 1299-1300 ("[W]e have

11   particularly criticized the use of a lack of treatment to reject mental complaints both because mental

12   illness is notoriously underreported.").

13          However, any error the ALJ may have made in discounting Plaintiff's mental health

14   complaints due to lack of inpatient treatment would be harmless.  As discussed above, the ALJ gave

15   three specific, clear, and convincing reasons to discount Plaintiff's subjective complaints.

16          Further, the Court notes that the ALJ did not completely discount Plaintiff's subjective

17   complaints.   The ALJ found that Plaintiff's impairments caused various limitations that he

18   incorporated into an RFC for a range of light work with numerous exertional, manipulative, postural,

19   environmental, and mental limitations.  AR 32.  Indeed, the ALJ discounted less limited restrictions

20   assessed by various physicians, in part due to Plaintiff's subjective reports.   AR 39 (adding

21   restrictions regarding unprotected heights and moving mechanical parts partly because of her

22   subjective reports regarding her neck, back, shoulder, and feet impairments); AR 40 (affording Dr.

23   Mumford's opinion little weight because it conflicted with Plaintiff's subjective complaints).  The

24   ALJ properly considered Plaintiff's subjective complaints when fashioning her RFC, discounting

25   them only when they suggested complete disability unsupported by the objective medical evidence,

26   effectiveness of treatment, and Plaintiff's daily activities.

27

28

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.     Plaintiff forfeited her challenge to the VE's testimony, but even if she did not, her argument fails.**

Plaintiff contends that the ALJ erred by relying on the VE's representation of the number of jobs in the national economy that she can perform.  The VE identified three representative jobs that Plaintiff could perform with the ALJ's hypothetical RFC: router, with 76,400 jobs available nationally; retail price marker, with 71,400 jobs available nationally; and electrical assembler, with 55,300 jobs available nationally.  Plaintiff contends that those national availability numbers are incorrect.  She cites to the Occupational Outlook Handbook (OOH) and the O*NET[7] to contend that those numbers are closer to 4,456, 7,260, and under 10,872 full-time jobs available, respectively.  ECF No. 19 at 10–12.  Plaintiff contends that the information contained in OOH and O*NET conflict with the ALJ's finding that there are sufficient jobs available in the economy, and therefore that finding is not based on substantial evidence.

The Commissioner contends that Plaintiff has waived this argument because she failed to question the VE about the suspect job numbers during the ALJ hearing, where she was represented by counsel.  "[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  The Ninth Circuit in *Shaibi v. Berryhill*, 883 F.3d 1102, 1109–10 (9th Cir. 2017), held that challenges to a VE's job numbers based on alleged conflicts with alternative sources of job information, such as O*NET or the OOH, must be raised "in a general sense before the ALJ" to preserve a claimant's challenge.  Plaintiff's counsel concedes that hearing counsel did not question the VE about the source of her statements regarding available jobs or present her with the conflicting data counsel now presents to this Court.  Rather, counsel contends that he submitted the alternative sources to the Appeals Council, so the issue was properly considered by the agency.  ECF No. 19 at 9.

---

[7]     O*NET is a job publication "sponsored by the [Employment and Training Administration] ("ETA") through a grant to the North Carolina Department of Commerce" that includes "current occupational information."  By contrast, the DOT was last updated in 1991 and is no longer maintained by the ETA. U.S. Dep't of Labor, Office of Administrative Law Judges, *Dictionary of Occupational Titles—Fourth Edition, Revised 1991*, https://www.dol.gov /agencies/oalj /topics /libraries/LIBDOT (last visited July 16, 2021).

1    Submitting new evidence to the Appeals Council, however, does not cure Plaintiff's

2    forfeiture. *Shapiro v. Saul*, 833 F. App'x 695, 696 (Mem) (9th Cir. 2021) ("Under *Shaibi*, the

3    submission of new evidence to the Appeals Council does not resolve the forfeiture issue, because

4    the issue was not first raised before the ALJ."); *see also Ford v. Saul*, 950 F.3d 1141, 1159 n.14 (9th

5    Cir. 2020) (challenging a VE's testimony may occur by cross-examining the VE at the hearing on

6    apparent conflicts, making a request to the ALJ to "submit supplemental briefing or interrogatories

7    contrasting the [VE]'s specific job estimates with estimates of the claimant's own," or, raising new

8    evidence before the Appeals Council *if the ALJ declines the request for supplemental briefing*)

9    (quoting *Shaibi*, 883 F.3d at 1110).  Many district courts have concluded that challenges to a VE's

10   testimony is forfeited where new evidence was submitted to the Appeals Council but the issue was

11   not first raised before the ALJ. *See, e.g.*, *Tommy D. J. v. Saul*, Case No. EDCV 20-1013-RAO, 2021

12   WL 780479, at *4 (C.D. Cal. Mar. 1, 2021); *McCloud v. Berryhill*, Case No. EDCV 16-2400-SP,

13   2018 WL 987222, at *4-5 (C.D. Cal. Feb. 20, 2018); *Roderick L. A. G. v. Saul*, Case No. CV 20-

14   5727-RAO, 2021 WL 2590159, at *3 (C.D. Cal. June 24, 2021).

15   Plaintiff points to a cursory footnote in an unpublished Ninth Circuit opinion to support her

16   contention that raising a challenge to the VE's testimony before the Appeals Council preserves the

17   issue on appeal.  ECF No. 19 at 13 (citing *Jaquez v. Saul*, 840 F. App'x 246, 247 n.2 (9th Cir. 2021)

18   (unpublished) (rejecting Commissioner's waiver argument because "it appears that the Appeals

19   Council considered this evidence in denying [Plaintiff]'s appeal")).  *Jaquez* is not precedent and is

20   therefore not binding on this Court.  Further, the Court finds the reasoning in *Shapiro* more

21   persuasive and indicative of how the Ninth Circuit would resolve this issue.  Therefore, the Court

22   finds that Plaintiff has waived any challenge to the VE's job number estimates.[8]

23   Further, the ALJ was not required to sua sponte resolve any conflict with the VE's testimony

24   and the OOH or O*NET.  Agency regulations and rulings require the ALJ to resolve any vocational

25

26   [8]    Plaintiff also submitted a notice of supplemental authority contending that the Supreme Court's decision in
     *Carr v. Saul*, 141 S.Ct. 1352 (2021) somehow forecloses the Commissioner's waiver argument.  ECF No. 20.  *Carr*
27   analyzed a very narrow issue of whether claimants forfeited a *constitutional claim* presented for the first time in federal
     court challenging the appointment of ALJs who decided their claims.  141 S.Ct. at 1356–57.  Indeed, *Carr* explained
28   that, "[o]utside the context of Appointments Clause challenges, such as in the sphere of routine objections to individual
     benefits determinations, the scales might tip differently." *Id.* at 1360 n.5.  It is not applicable to the facts of this case.

conflicts with the DOT and the SCO.  *See* 20 C.F.R. § 404.1566(d); SS 00-4p.  The same obligation does not apply to any other publication.  *See Shaibi*, 883 F.3d at 1109–10 (rejecting argument that ALJ had an obligation to consider the OOH sua sponte); *Gonzales v. Saul*, 833 F. App'x 464, 465 (9th Cir. 2021) (unpublished) (same); *Vizcarra v. Saul*, 833 F. App'x 461, 462 (9th Cir. 2021) (same); *Lusson v. Saul*, Case No. 2:20-cv-1215-DJA, 2021 WL 510618, at *7 (D. Nev. Feb. 11, 2021) (finding ALJ not required to resolve conflicts between testimony and OOH or O*NET); *Tommy D.J.*, 2021 WL 780479, at *5 (Mar. 1, 2021) (finding that "the ALJ is not required to reconcile conflicts between the VE's testimony and non-DOT sources" and collecting cases).

Further still, the ALJ's reliance on the DOT information, even in the face of conflicting evidence from other sources, is sufficient to demonstrate that substantial evidence supports the ALJ's findings.  The ALJ is entitled to rely on the VE's testimony regarding the number of jobs in the economy.  *See* 20 C.F.R. § 416.966(e) (authorizing ALJs to rely on a VE's testimony to determine occupational issues); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005) (upholding ALJ's reliance on VE's testimony regarding job numbers).  Here, the VE's testimony, in reliance on DOT data, meets the substantial evidence standard.  *See Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2021) (finding that VE's testimony regarding jobs plaintiff could perform "was supported by [the expert's] unchallenged expertise and her reference to the [DOT]" and therefore "constituted substantial evidence" despite Plaintiff's new, conflicting evidence from O*NET and the Occupational Requirements Survey).

## IV.    ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 19) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 23) is GRANTED.

1    IT IS FURTHER ORDERED that the Clerk of Court shall close this case and enter judgment

2  accordingly.

3    DATED THIS 16th day of July, 2021.

4

5  _____
   ELAYNA J. YOUCHAH

6  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28